**NEWMAN, WILLIAMS, MISHKIN, CORVELEYN, WOLFE & FARERI**
A PROFESSIONAL CORPORATION

BY: RONALD J. MISHKIN, ESQUIRE          ATTORNEY FOR: Plaintiff, Sharlene Gore
IDENTIFICATION NO. 14912
LAW OFFICES
712 MONROE STREET
P.O. BOX 511
STROUDSBURG, PA 18360-0511
(570) 421-9090
(570) 424-9739 (FAX)

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARLENE GORE | : | SOCIAL SECURITY |
| | : | |
| Plaintiff, | : | No. 1:13-cv-02151-CCC |
| | : | |
| vs. | : | Electronically Filed |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**Brief in Support of Appeal from
Decision of Social Security Administration
On Behalf of Plaintiff**

## I.    Statement of the Case

*a.    Procedural History*

On October 20, 2008, the Social Security Administration (SSA) denied the

application by Plaintiff, Sharlene Gore (the "Claimant"), for benefits under Title II

of the Social Security Act. *Doc. 8, p. 192.*  Upon request, a hearing was convened

on January 15, 2010 before Administrative Law Judge Paul McAdam.

By way of decision dated February 2, 2010, ALJ McAdam denied benefits to Claimant.

On March 5, 2010, the Claimant filed a Request for Review to the SSA Office of Disability Adjudication and Review Appeals Council (the "Appeals Council"). *Id., p. 246.* On June 17, 2010, the Appeals Council reviewed the decision and ordered the ALJ to convene a supplemental hearing with specific instructions to:

(1)    Further evaluate claimant's work performed subsequent to the alleged onset date to determine if claimant performed substantial gainful activity under 20 CFR 404.1574 and 404.1575), and;

(2)    If warranted by the expanded record , continue beyond step one of the sequential evaluation process (20 CFR 404.1520).

*Id., p. 206.*

A second hearing was held on December 7, 2010 before Administrative Law Judge Sridhar Boini.  ALJ Boini denied Claimant benefits by way of decision dated May 16, 2011. *Id., p. 207.* On May 26, 2011, Claimant filed another Request for Review to the Appeals Council. *Id., p. 258.* On August 23, 2010, the Appeals Council granted the request for review under the error of law provision of the SSA's regulation (20 CFR 404.970) and ordered the ALJ to convene a

supplemental hearing with the specific instructions as outlined above.  *Id., p. 221.*

On January 7, 2013, the Claimant appeared for a supplemental hearing before Administrative Law Judge Richard Zack.  On January 28, 2013, ALJ Zack denied benefits to Claimant.  *Id., p. 53.*  Claimant filed a Request for Review on March 12, 2013, which was denied by way of Order dated May 15, 2013.  *Id., p. 21.*  The Claimant filed a request for reconsideration on May 21, 2013, which was denied on June 26, 2013.  *Id., p. 1.*

The Claimant filed the Complaint indexed to the above docket number against the Commissioner of Social Security on August 14, 2013.  *Doc. 1.*  The Commissioner filed an Answer to the Complaint on November 12, 2013.  *Doc. 7.*

This is the brief in support of Claimant's appeal.

b.      *Factual Background*

Claimant was born on October 9, 1969.  *Doc. 8, p. 63.*  Claimant's alleged disability onset date was June 20, 2007, with a date of last insured of December 31, 2011.  *Id., pp. 45-46).*

From 1986 to 2007, Claimant had a long and productive work history mostly as a prison guard.  *Id., p. 323.*  In 2005, two years prior to her onset date, the Claimant earned almost $50,000.00.  *Id.*

Claimant's treating physician is Dr. James B. Kim.  *Id., p. 659.*  Prior to

2007, Dr. Kim treated the Claimant for right wrist, forearm, elbow, lateral epicondylitis pain and complex regional pain syndrome in the upper right extremity. *Id.* In June of 2007, Claimant began to treat with Dr. Kim as the result of injuries she suffered when a co-worker assaulted her. *Id.* Dr. Kim ordered an MRI of the cervical spine, which confirmed mild degenerative spondylosis and a disc herniation at C4-C5. *Id., p. 658.* The U.S. Department of Labor Office of Workers' Comp Programs (OWCP) approved a surgical decompression of C4-C5. *Id.*

The Claimant testified she is in constant pain and does not remember what it was like to live without pain. *Id., p. 72.* She testified she treats with epidural shots, pain medications, muscle relaxers, and physical therapy. *Id., pp. 73-74.* She uses a TENS, a wave unit and other apparatus designed to stimulate and stretch her neck. *Id., p. 77.* Claimant testified the pain radiates down her back and is coupled by a burning sensation throughout her neck and shoulders. *Id., p. 74.* She said if she performs routine tasks with her dominant right-hand such as scrubbing a pot or holding a spoon for more than a minute or two her hand swells. *Id., p. 75.*

Claimant testified she works part-time for a non-profit corporation which helps former inmates assimilate back into society. *Id., p. 70.* This part-time work

4

is performed primarily out of her home and Claimant is free to make her own schedule to accommodate her physical limitations. *Id., p. 75.* Sometimes she works five hours in a day while other days she does not work at all. *Id.* Claimant testified she works off hours, such as at 2:00 a.m., to accommodate her pain. *Id.*

On October 30, 2009, Dr. Kim executed a Residual Functional Capacity (RFC) questionnaire. *Id., p. 726.* On the questionnaire the doctor indicated he had treated the Claimant in excess of three years. *Id.* Dr. Kim noted the Claimant's impairments lasted at least 12 months and she was not a malingerer. *Id., p. 727.* Dr. Kim stated the Claimant was constantly in pain and was incapable of even "low stress" jobs. *Id.* Dr. Kim found the Claimant had the following functional limitations:

- Can only sit 5 minutes before needing to get up;
- Can only stand 5 minutes before needing to sit or walk around;
- Can only sit for 2 hours in an 8 hour work day with normal breaks;
- Can only stand for 2 hours in an 8 hour work day with normal breaks;
- Needs to take unscheduled breaks during the workday;
- Needs to shift at will between sitting, standing and walking;
- Can rarely lift less than 10 pounds;
- Can never lift more than 10 pounds;
- Will likely need to miss more than 4 days a month due to impairments.

*Id., pp. 727-730.*

## II.   Issues Presented

Whether the decision of the ALJ should be reversed since it is not supported by the substantial evidence of record?

   *Suggested Answer:        Yes.*


## III.   Argument

   *a.    Standard of Review*

When reviewing the denial of Social Security benefits, the Court must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1059 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F. 3rd 358,360 (3rd Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether the Commissioner's decision rests upon a foundation of substantial evidence it is an Appellate Court's responsibility, to examine and scrutinize the whole record and reverse or remand as necessary. *Smith v. Califano*, 637 F.2d 968, 970 (2nd Cir. 1981).

b.    *Law as Applied to Facts*

The Social Security Act (the "Act") defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace.  In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *42 U.S.C. § 423 (d)(1)(A)*.

The Act further provides that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job exists for him, or whether he would be hired if he applied for work." *42 U.S.C. § 423 (d)(2)(A)*; *Hecker v. Campbell*, 461 U.S. 458, 459-60,103 S. Ct. 1952, 76 L.Ed. 2d 66 (1983).

The Commissioner utilizes a five-step process in evaluating disability insurance claims.  *See 20 C.F.R. § 404.1520*.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination

7

of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *Daniels v. Astrue*, 2009 U.S. Dist. LEXIS 32110, 9-10 (M.D. Pa. Apr. 15, 2009) (Muir, J.).

As part of step four the administrative law judge must determine the claimant's residual functional capacity. *Id.* Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See Social Security Ruling 96-8p*, 1996 SSR LEXIS 5, 61 Fed. Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. *Id.*; *20 C.F.R. § 404.1545*.

At Step 1, the ALJ found the Claimant did not engage in substantial gainful activity from the alleged onset date of June 27, 2007 through March 31, 2011. However, the ALJ did find the Claimant engaged in substantial gainful activity from April 1, 2011[1] through December 31, 2011, the date last insured. *Doc. 8, p. 47.*

---

[1] April 1. 2011 marks the date the Claimant began her part-time work with the inmate re-entry program. *Id., p. 70.* As such, the claim is for a closed period of disability from June 27, 2007 through March 31, 2011, plus a two month umbrella.

At Step 2, the ALJ found the Claimant suffered from the following severe impairments: degenerative disc disease of the cervical spine with right-sided radiculopathy.  *Id., p. 48.*

At Step 3, the ALJ found that from June 27, 2007 through March 31, 2011 the Claimant did not have impairment or a combination of impairments that met or equaled the requirements of a listed impairment.  *Id.*

At Step 4, the ALJ found the Claimant was capable of performing a range of sedentary work with certain limitations.  *Id.*  However, the ALJ found the Claimant was unable to perform any past relevant work from June 27, 2007 through March 31, 2011.  *Id., p. 51.*

Ultimately, the ALJ held that given the Claimant's age, education, work experience, and residual functional capacity that there were jobs that existed in the national economy that the Claimant could have performed.  *Id., p. 52.*  As a result, the ALJ found the Claimant was not under a disability at any time from June 27, 2011, the alleged onset date, through March 31, 2011, the date of last insured.

### 1.    The ALJ findings were contrary to the medical and opinion evidence of record.

The ALJ's adverse decision was not supported by the substantial medical and opinion evidence of record, and therefore this Court should overturn the

decision.

As a preliminary matter, The ALJ determined the Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible and were not supported by the medical evidence of record.

The ALJ erred by failing to factor into the assessment of credibility the fact that the Claimant had a long and productive work history.  When a claimant has a work record long and productive work history including many years of service with the same employer her testimony as to her capabilities is entitled to substantial credibility.  *Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).*

In this matter, the ALJ noted the Claimant's "excellent" work history as a prison guard. *Doc. 8, p. 50.*   However, the ALJ failed to afford the Claimant *any* credibility based on this excellent work history let alone substantial credibility. This was an error since the long and productive work history was coupled with evidence of severe impairments as reflected in the records of her long-time treating physician, Dr. Kim.

The problem is that the ALJ again erred by giving little weight to the opinions of Claimant's long-time treating physician.  Treating physicians' reports should be accorded great weight in social security disability cases, especially when

their opinions reflect expert judgment based on continuing observation of patient's condition over prolonged period of time.   *Social Security Act, §§ 205(g), 223, as amended, 42 U.S.C.A. §§ 405(g), 423; 20 C.F.R. § 404.1520.*

The Claimant treated with Dr. Kim for a period of five years.  However, the ALJ disregarded the opinion evidence submitted by Dr. Kim in the form of a RFC questionnaire.  In the questionnaire Dr. Kim found the Claimant had the following functional limitations:

- Can only sit 5 minutes before needing to get up;
- Can only stand 5 minutes before needing to sit or walk around;
- Can only sit for 2 hours in an 8 hour work day with normal breaks;
- Can only stand for 2 hours in an 8 hour work day with normal breaks;
- Needs to take unscheduled breaks during the workday;
- Needs to shift at will between sitting, standing and walking;
- Can rarely lift less than 10 pounds;
- Can never lift more than 10 pounds;
- Will likely need to miss more than 4 days a month due to impairments.

*Id., pp. 727-730.*

The ALJ acknowledged that if he accepted the RFC questionnaire as accurate he would have to find the Claimant disabled.  *Id., p. 50.*  Instead, the ALJ afforded Dr. Kim's opinion "little weight" because it was contrary to Claimant's own activity level and muscle strength findings on exams.  *Id.*  The ALJ failed to address how the limitations in Dr. Kim's RFC questionnaire were contrary to Claimant's activity level.

11

Regardless, the ALJ then proceeded to determine the Claimant had the RFC to perform a range of sedentary positions with various limitations; limitations contrary to Dr. Kim's limitations.  For example, the ALJ found the Claimant could, with normal breaks and lunch, sit for six hours in an eight hour day.  *Id., p. 48.* This directly contradicts the opinion of Dr. Kim who opined that the Claimant could only sit (with normal breaks) for a total of two hours in an eight hour work day.  *Id., 728.*  The ALJ also found the Claimant could lift 2-3 pounds frequently and 10 pounds occasionally whereas Dr. Kim opined the Claimant could only lift less than 10 pounds rarely and never lift over 10 pounds.  *Id.*

Dr. Kim also stated in the RFC questionnaire that the Claimant's condition was likely to result in good and bad days and she would be forced to miss in excess of 4 days a month from work.  *Id., p. 730.*  The vocational expert testified that if the Claimant had to miss more than 4 days a month from work that would substantially preclude all employment.  *Id., pp. 89-90.*  This absenteeism limitation was not addressed by the ALJ in the decision.

Ironically, the ALJ gave little weight to Claimant's treating physician and then disregarded the opinion of a physician who performed an independent medical evaluation on Claimant because the physician did not have a "treating relationship."  *Id., p. 51.*  Dr. Charles R. Levine, M.D. evaluated the Claimant in

the context of a worker's compensation matter and opined the Claimant was "totally disabled" as of June 20, 2007. *Id., p. 746.* The ALJ tries to make the argument Dr. Levine's finding of total disability applied to Claimant's former position as a prison guard and not that the Claimant was precluded from all work. *Id., p. 51.* However, Dr. Levine himself made no such distinction in his report.

In sum, the ALJ's findings were contrary to the medical evidence of record, specifically the medical opinions of a long-time treating physician and an independent consultant, and should therefore be overturned.

## IV.   Conclusion

Because the determination of the ALJ is not supported and cannot be sustained by substantial evidence the matter should be reversed, or in the alternative, remanded to the hearing office for further proceedings.

Respectfully submitted,

**NEWMAN, WILLIAMS, MISHKIN,
CORVELEYN, WOLFE & FARERI, P.C.**

s/     Ronald J. Mishkin, Esquire
       Atty. ID # PA 14912
       Attorney for Plaintiff

13

**Certificate of Service**

I hereby certify that I am, this day, serving the foregoing document upon the

individual below via ECF.

Mark.E. Morrison
U.S. Attorney's office - Social Security
228 Walnut Street
Suite 200
Harrisburg, PA 17108
717-221-4482
Email: mark.e.morrison@usdoj.gov

**NEWMAN, WILLIAMS, MISHKIN,
CORVELEYN, WOLFE & FARERI, P.C.**

s/      Ronald J. Mishkin, Esquire
        Atty. ID # PA 14912
        Attorney for Plaintiff

Date:  December 27, 2013